Thank you, Your Honor. May it please the Court, my name is Ryan Wood. I'm pro bono counsel for the appellant in this case, Edi Gonzalez-Diaz. He's also known better by his family and friends as Daniel. I'd like to begin by thanking the Court for its flexibility. I had a scheduling issue and this morning was my son's ceremony or celebration from his preschool graduation, so I do appreciate the Court's flexibility and counsel. Congratulations. Thank you. I know the Court has read the papers, so I'll do my best not to rehash covered territory, but I think that one central point that warrants some further discussion is a key word that we find in the CFR, a key word that was used by the trial court in this case, and that's the word credible. The trial court made it clear in no uncertain terms that Mr. Gonzalez-Diaz's testimony, the key witness in that case, that his testimony was credible. The Court went on to say that the events that he described, his experiences, were credible and in that case they were deemed to be true. And that's an important distinction here, because that drives us to the central reason why we're on appeal here in the trial court's departure from that credible testimony, which deemed to be true, and coming up with a different result that's not supported by any evidence. And that's why we are here under a de novo standard review. That's my client's position. And the guidance for that I think we can find out in the Lozano-Mahano case, this Court's decision, where even in that case the appellant, an El Salvador applicant for asylum, she described her horrible situation. And even though she was ultimately denied asylum by the lower court, this Court found that under those facts it appears that the lower court determined her testimony to be credible. There was no specific finding as such, but this Court read into the record that her testimony must be credible. Here we actually have an express finding by the trial court that Mr. Gonzalez-Diaz was credible. So what we have here, Your Honors, is we have one story, one credible story, one set of facts. And with that one set of facts, the ultimate dispositive question is, did he meet his burden of proof for his application for asylum? And I think the answer to that is yes. And for that, and I could go into more specific, but the reason why I think that this is an important distinction, this credibility distinction, I think what we have here, perhaps an overly simplified hypothetical, we have Mr. Diaz take the stand. Say a witness takes the stand and says in an injury case, I was there, I saw it, the light was red. The Court at the conclusion of trial with no other testimony says, we believe you, Mr. Witness, the light was red. But as the Court's done some analysis, and after our analysis we determined that judgment warrants that the light's green. That's essentially what we have here, and I realize it's an overly simplified statement of the case, but that's what we have. We have Mr. Gonzalez-Diaz, his testimony at trial. He described his scenario where his father was accosted by these guerrillas. His father had to flee the country because he was going to be forcefully recruited or intimidated and threatened with murder if he didn't. Mr. Gonzalez-Diaz described a scenario where another teenage boy from his village was accosted and forcefully recruited into the country. Now, being accosted by guerrillas is a really nasty, unpleasant experience. I wouldn't wish on anybody. But that's not a qualification for asylum in this country. Well, I respectfully disagree, Your Honor, with the factual circumstances here, and the reason why is because these guerrillas were looking to recruit him for a specific purpose. Okay, but being recruited by guerrillas has never been grounds in this circuit or any other circuit for granting asylum. If you are persecuted on account of a particular characteristic and the government fails to protect you or you're being persecuted by the government, that may be grounds for asylum. That's a fair point, Your Honor. And that's the problem here is that the BIA said your client wasn't threatened on account of. Well, he was threatened, Your Honor, on account of, of course, they wanted to recruit him. I understand Your Honor's position. They wanted to recruit him, but he was also threatened. He was threatened because of his lack of political alliance with this particular group. He was targeted because he was an indigenous man-male, and he was threatened. If you don't join this group, then next time we see you, we're going to kill you. That's what they told him. So his indifference to their position, their political position, he did not want to take up arms against the Guatemalan government. He didn't want to join their group. So his lack of interest in this particular affiliation is what warranted that that's the persecution. They're threatening him. They see him again. Okay, recruiting is one thing, but. You see, but the question is whether that persecution was on account of a political opinion. Another way to look at it, which is the way I think the BIA looked at it, was that, as they say, they asked him. The BIA says the respondent was not approached because he was indigenous, but because they wanted him to fight. In other words, it's sort of their, their, their version of the draft. They don't care what your political opinion is. They just want, they just need another warm body. How is that persecution? Well, and I did take some issue with that finding, Your Honor, and here's the reason. Mr. Diaz specifically testified that he was accosted because he was indigenous man-male. And then the court makes a finding that was, as you pointed out, it was contrary to that. Let's suppose, let's suppose that the, that the guerrillas thought that, that males from the MAM group, ethnic group, were, were, were susceptible to recruitment because they didn't, they weren't generally politically affiliated. Now, what, what qualifies that for asylum? Well, that is. That persecution on account of? Well, that by itself, no, Your Honor. I think it's, it's the factual totality which included the threat, the threat of violence for his lack of interest in joining their political affiliation. Now, recruiting and joining the organization is one thing, and that's one part of it. But the more central part of it is if he didn't do it, if he didn't align himself with their political affiliations as an indigenous man-male, by failing to do as they demand, that he's subjecting himself to persecution. They're not going to kill him because he's a MAM. They're going to kill him because he doesn't want to become a guerrilla. Well, I think they will kill him because he's MAM, because they're not recruiting other people. They're recruiting him because he's in that particular social category. They're the ones that are more likely to take up arms and be aligned with this political affiliation. A person like me passing through Guatemala is not likely to run into the same type of scenario. He's, he's from a remote, rural area. He's indigenous. He's, he's more likely to be politically aligned with them, and that's why they target him. And his lack of interest, his indifference to their political position is what caused him to be persecuted and threatened physical violence for his life. And in that sense, the, that testimony has taken us credible. And the conclusion, I can understand a debatable point about whether or not there could be another conclusion. Mr. Gonzalez-Diaz described that it was because he was indigenous man-male, and because he would not affiliate with their political interests, that that was the reason that he was being persecuted. And I can recognize that the trial court may disagree with that. But here, the legal issue here is that the trial court said he's credible. So that's, that's the legal issue that comes to a head here is if the trial court did not believe his story or the trial court did not want to come to the same conclusion as Mr. Diaz that he testified to under oath, that that trial court is absolutely empowered to do that. But the trial court must refrain from using the word credible when it, when it makes a finding as to his testimony. Because in doing so, it runs an inconsistent result that brings us here on appeal. We're just looking at the record. It's too difficult to determine what the result was intended to be. The trial court says he's, he's truthful. The light was red. And then the trial court issues judgment and says despite his truthful testimony, the light was red, the light is now green. That, that inconsistency is the problem. What line in the record do you think the, the immigration judge ignored or contradicted? Well, Mr. Gonzalez-Diaz did specifically testify that he was targeted because he's indigenous man-made. Right. He did or he did not? He did. That he, he was targeted specifically. And what page in the record is that? Bear with me, Your Honor. It's the record page 246 questions. So you testified that the attacker said to you that they attacked you because you were young and poor and indigenous man. Answer yes. In your declaration, you stated that they said to you that they wanted to take you because they needed people who are young and indigenous. Answer yes. That testimony, deemed to be credible, was then ultimately contradicted by the immigration judge's ultimate finding, which is that he was not targeted for this reason. And that's, that's the problem here. Judge can't, the trial court can't say he's credible, believe this testimony, and then issue a ruling at the end of the day that says that that's not the case. If the trial court didn't believe Mr. Diaz when he made this testimony, the trial court should have made that clear in the record, or at least carved it out in some fashion. And the trial court did not do that. And in concluding, Your Honors, the stakes here are high. Even the expert testified that if Mr. Diaz is to return to Guatemala, if he's to be removed back to Guatemala, he will be targeted and likely will face torture and highly likely he may face death from these guerrilla groups, these clandestine groups. So the stakes are high. There's one story here, one credible story. The trial court found him to be credible. I think it warrants only one result. Under a de novo standard review, I respectfully request this Court take a look at the testimony, the record, and issue a ruling reversing and remanding with instructions. Thank you, counsel. Thank you, Your Honor. Counsel, I will give you one minute for a rebuttal. Thank you. Good afternoon, Your Honors. I'm Erica Miles for Attorney General Holder. Just to quickly address the point about the standard of review here, we don't have a legal issue before the Court. The Court's longstanding and recently reaffirmed standard of review in its Regalado case on June 5th is that when it's reviewing questions about facts and whether or not an applicant has met his burden of proof of showing that he was persecuted or will be persecuted on account of a protected ground, that this Court reviews for substantial evidence. It applies the standard that Elias Zacharias by the Supreme Court outlined and what this Court has been applying for many, many years. It is a substantial evidence level of review. I recognize the conflict that Mr. Wood identified. In other words, accepting the Petitioner's testimony is credible that he was persecuted on account of being from the man group, one. And then, two, defining that he was not persecuted on account of belonging to any group. Are those contradictory? They are not contradictory. It's a question about meeting the burden of proof. The agency here did, in fact, deem him credible. It reviewed all the facts that opposing counsel did outline here. It just found that in the facts and the scenario and the claim that Mr. Gonzalez-Diaz laid out just did not meet those standards for asylum. He did not show that he was harmed or would be harmed because of a protected ground. Before you get to harm, though, then you agree he was not denied asylum because he didn't belong to a protected group? That's not the reason for denying asylum? That is the reason. He was because he did not – not because he didn't belong. It was because he didn't establish that link, that the motive, which is key here, that the motive of the persecutor for approaching him in the first place and then for seeking to harm him because he refused to join, he did not show that linking motive to the fact that he is an indigenous mom or his political opinion. That nexus, that on-account of element is paramount to show whether or not you can qualify for asylum or withholding of removal. Here we have a classic Elias Zacharias case. We have guerrillas seeking to recruit. They approached Mr. Gonzalez-Diaz by his own testimony because he seemed to be recruitable based on his characteristics. They wanted him. They wanted him to join. They weren't seeking to overcome. They weren't seeking to punish any characteristic at that point. Counsel, there doesn't seem to be any evidence that the guerrillas were persecuting members of the mom ethnic group. They weren't shooting moms on sight. They weren't singling out moms. Take this hypothetical. Let's suppose that for reasons unknown to any sane person, the guerrillas decided to recruit Presbyterians because they thought the Presbyterians were generally opposed to governments and therefore thought that they might be amenable to joining the guerrilla group. When Presbyterians don't join, the guerrillas become very frustrated and threaten to kill them. Now, if they are recruiting Presbyterians at unprecedented numbers and threatening to kill Presbyterians at unprecedented numbers, they're not killing Presbyterians because they're Presbyterians but because they're rejecting their arbiters to join the group. But aren't they singling out Presbyterians for persecution in that case? I mean, if we have guerrilla groups who are threatening Presbyterians in numbers far more than any other identifiable group, haven't they effectively singled out somebody on the basis of their religion? I would call this a case of that scenario of being discriminating in who they approach versus discriminatory in why they're approaching them. But if you're a Presbyterian in the hypothetical that I gave you, you're in a lot more danger than if you're a Methodist. Perhaps, but it's all about the perception of the persecutor at that time. The persecutor's motive, the persecutor's state of mind is because they are recruitable for one reason or another more so than somebody else. So when they approach the Presbyterians in that hypothetical, they're seeking to have them join because it's advantageous to their criminal enterprise, to whatever motive that they're seeking to fulfill. And if the Presbyterians don't and they seek to harm them because of that, that refusal then causes them to retaliate. The whole reason is that they said no. But we've now singled out Presbyterians in unprecedented numbers vis-a-vis everybody else. Well, here we don't seem to have that on the record in the same sort of unprecedented numbers, but I still would contend that because they're not being targeted for that very reason, and then you would question if unprecedented numbers are really at issue, you would look more to what is the government doing at that time to get involved, if it's such a pervasive problem. But here we're not talking about such a pervasive problem in the first place. We're talking about guerrillas who are seeking to fight against the government and they're looking for more people to join their ranks to help out. Again, it's classic, and what you described with the Presbyterians really would still be a classic Elias Zacharias case that the Supreme Court has already decided and forecloses Mr. Gonzalez-Diaz's claim based on his own testimony. I mean, he said in his statement that the guerrillas told me they beat and killed people who refused to join, not because they're mom, not because of their political opinion. They beat and killed them because they refused to join. It's retaliation. It's exactly what happened in Elias Zacharias. His own testimony bears out a claim that matches the Elias Zacharias claim and not a claim that shows that he's targeted in the first place to be overcome or punished based on some characteristic that he has. They want him because of his characteristic. They don't want to punish him because of his characteristics. That's the distinguishing factor here, the motive of the persecutor. If the Court doesn't have any further questions, I won't take up any more of your time. Mr. Gonzalez-Diaz has not shown that he is eligible for asylum or withholding of removal or cap protection, and the Court should deny the petition. Thank you. Did you have a question? At what point does Mr. Gonzalez's credibility start to wane here before the IJ? He was deemed fully credible. It was a matter of they took his statements, his words. We have his testimony and his affidavit, and they took it for what it was. But it still doesn't make any difference, right? It doesn't make a difference because it just doesn't meet that burden of proof. Thank you. Thank you, counsel. Mr. Ward. I'll be brief, Your Honor. Just to address the nexus issue raised by counsel, one of the important facts that Mr. Gonzalez-Diaz did testify to was basically the temperature of the region and the way the behavior of this group acted. For instance, he gave testimony, specific testimony, of a dead body that he saw that appeared to be attacked by the guerrillas. It was clearly a murder, and it appeared to be somewhat of a display, of an act, a communication from this group that, hey, if you don't agree with us, you don't do what we tell you to do, this is going to be you. A dead body laying out in public for all to see is more than retaliation if they don't get what they want when they approach you. It's specific intimidation. And it's a typical type of intimidation by these groups. They were sending a message. Intimidation, but on account of what? On account of the fact that, Your Honor, on account of the fact. I'm sorry. Did you finish your question? Yes. Okay. On account of the fact that this is a recruitable group, as counsel pointed out, if this recruitable group is available for recruitment and they get approached by this guerrilla group, they want everybody to know in advance that if you don't give in and do what they ask you to do, that you will be further intimidated, potentially murdered, your family may suffer, you're going to suffer. That's the whole point of leaving dead bodies on the road. It's not to retaliate after the fact. It's to let you know in advance before they contact you that this is a specific type of persecution. The whole point, though, is it's retaliation for refusal to join the guerrillas, right? Isn't that what it's the retaliation for? Retaliation for refusal to join the group, but the persecution as a result of being a man-male. And being a man-male, he was already being intimidated by this group before he was even contacted and accosted by them, by a series of events including the dead body, including his father being accosted, including another teenager in there. Well, let me ask this question. Is there any evidence in the record either way as to are all man-males subject to recruitment? Certainly in this rural area of Guatemala, yes, Your Honor. Or just of a certain age or? Where's the evidence that in this area of Guatemala all the man-males are subject to recruitment? Well, there was testimony to that effect, not words exactly to that effect, but close to that effect by the expert who testified. And I don't have the precise pin reference, but I believe it's in our papers. Is there any further questions, Your Honor? I don't think so. Thank you. Thank you very much. We appreciate your service pro bono as well, counsel. Thank you very much. Thank both counsel for the argument. The court is adjourned.
judges: Stafford, Tashima, Bybee